IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MOSHE YEHUDA DUNOFF,<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY

1. From at least January 2009 through December 2010, defendant Moshe Yehuda Dunoff participated in an offering fraud that raised over $1.5 million from 58 investors in 14 countries through the purported purchase and sale of discounted U.S. securities.

2. Individuals participating in the fraud in Southeast Asia made unsolicited telephone calls to prospective investors, claiming that they worked for a Chicago-based broker-dealer named Gruber and Green, Inc. ("Gruber and Green"). The callers told prospective investors that Gruber and Green could sell them common stock in publicly traded companies at substantial discounts to achieve significant profits.

3. In reality, Gruber and Green did not exist, and the statements made to investors to induce them to invest money were lies. The investors not only failed to receive the significant profits that they were promised, but also lost the entire amount of their original investments.

4. Investors were victimized in two ways. First, investors were solicited by purported Gruber and Green financial advisors to wire funds to U.S.-based bank accounts controlled by Dunoff for the purchase of stock. However, investor funds were not used to purchase common stock as promised. Instead, Dunoff kept a portion of the proceeds for his own benefit and transferred the remaining funds to bank accounts in the Philippines, Thailand, and Indonesia controlled by others involved in the scheme.

5. Later, individuals claiming to be financial advisors with Gruber and Green contacted certain investors, falsely telling them that the recently purchased securities were sold for an exorbitant profit. The financial advisors claimed that, before they could release the sale proceeds, the investors had to send an "advance fee" to Gruber and Green to cover taxes and other expenses. Based on such misstatements, the investors sent additional funds to U.S.-based bank accounts controlled by Dunoff. Again, Dunoff kept his portion of the proceeds and transferred the remaining funds to bank accounts in the Philippines, Thailand, and Indonesia.

6. As a result of the conduct described in this complaint, Dunoff violated Sections 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1) and (3)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [C.F.R. § 240.10b-5(a) and (c)].

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin such acts, transactions, practices, and courses of business and to obtain disgorgement, prejudgment interest, civil money penalties, and such other and further relief as the Court may deem just and appropriate.

8. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

9. Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Eastern District of Pennsylvania.

## DEFENDANT

10. **Moshe Yehuda Dunoff**, age 29, resided, at various times, in Philadelphia, Pennsylvania, Baltimore, Maryland, and London, England, during the time period in which the conduct described herein took place, and currently resides in West Palm Beach, Florida.

## RELATED ENTITY

11. **Gruber and Green, Inc.** is the name of a fictitious broker-dealer used to defraud investors.

## FACTS

### The Offering Fraud

12. From at least January 2009 through December 2010, Dunoff and others located in Southeast Asia were complicit in a "boiler room"-type offering fraud in which they raised over $1.5 million from 58 investors in 14 countries through the purported purchase and sale of discounted U.S. securities.

13. As part of the scheme, individuals located in Southeast Asia made unsolicited telephone calls to prospective investors, claiming that they worked for a Chicago-based broker-

3

dealer named Gruber and Green, Inc. and proposing a no-lose investment strategy. In reality, Gruber and Green did not exist, and the proposed investment strategy was a sham.

14. During these calls, prospective investors were told that Gruber and Green could sell the investors common stock in publicly traded companies at substantial discounts. Prospective investors were also told that Gruber and Green could arrange for the future sale of such securities to "institutional investors" at a premium.

15. Dunoff, operating primarily from Bala Cynwyd, Pennsylvania, played a central role in this fraud. Dunoff opened six checking accounts at three different banks in Pennsylvania and Florida in the name of Intereast Financial Brokers ("Intereast") and, later, opened an account in Florida in the name of Trans World Trading ("Trans World").

16. As part of the scheme, once the individuals claiming to be affiliated with Gruber and Green fraudulently convinced investors to purchase securities, they provided the investors with payment instructions directing them to transfer funds to either the Intereast or Trans World bank accounts maintained by Dunoff.

17. Both Intereast and Trans World were fictitious companies and had no business purpose besides collecting the funds that Gruber and Green's victims were duped into transferring. Dunoff used these company names to legitimize the transaction and conceal the fraudulent scheme from prospective investors.

18. Once those funds were received, neither Dunoff nor anyone else associated with this scheme used any of the investor proceeds to purchase the promised securities. Instead, Dunoff kept a portion of the proceeds for his own benefit, and transferred the remaining funds to bank accounts in the Philippines, Thailand, and Indonesia controlled by others involved in the scheme.

19.     As an example, a caller purporting to be affiliated with Gruber and Green offered one investor ("Investor A") an "institutional discount" if he purchased shares of Diamond Offshore Drilling, Inc., a NYSE-listed stock. The caller also claimed that the investor's shares would be repurchased by the company at a 20% premium. Both of these statements were false. Based on these misrepresentations, Investor A transferred more than $204,000 between April 21, 2010 and June 18, 2010 to U.S.-based bank accounts affiliated with the scheme and controlled by Dunoff. Investor A never received this money back.

20.     Similarly, a caller purporting to be affiliated with Gruber and Green fraudulently told another investor ("Investor B") that an "institutional buyback" would enable him to nearly double his investment. Based on this misrepresentation, Investor B transferred more than $63,000 between March 6, 2009, and December 28, 2009, to U.S.-based bank accounts affiliated with the scheme and controlled by Dunoff. Investor B never received this money back.

21.     While soliciting prospective investors to purchase securities, the callers hid their true identities by using fake names, including David Bacon and Carl Massey. To conceal their overseas locations, and to make it appear as though they were calling from the Chicago area, the callers used Voice over Internet Protocol telephone numbers with Illinois-based areas codes. They also created a fake Gruber and Green website, which described the company as a well-established provider of financial planning services located in Chicago, Illinois.

22.     They deceived investors by using Gruber and Green letterhead, account applications, and email addresses. After the purported investments, some investors received fake payment receipts from Gruber and Green's "accounts department," listing the name, price, and quantity of shares purchased. Some investors also received fake trade confirmations and stock

5

certificates from individuals claiming to be associated with Gruber and Green, purporting to reflect their purchases and ownership of securities.

23. Individuals claiming to be financial advisors with Gruber and Green victimized some investors a second time. Some investors were contacted by individuals claiming to be Gruber and Green financial advisors who falsely told the investors that they had sold the recently purchased securities for an exorbitant profit. These "financial advisors" claimed that, before they would release the sale proceeds, the investors had to send an "advance fee" to Gruber and Green for taxes and other expenses.

24. As a result of these fraudulent statements, some of these investors sent additional funds to U.S.-based bank accounts associated with the scheme and controlled by Dunoff, expecting to then receive their purported trading profits. The investors received neither their principal amount invested, nor the significant trading profits they were promised.

25. For example, a caller claiming to be Carl Massey at Gruber and Green contacted one investor ("Investor C")—who had previously transferred $95,000 into a bank account controlled by Dunoff for the purchase of shares in Atlantic Wind & Solar, Inc., a NASDAQ-listed company—and advised him that his shares had be sold for $435,000. "Massey" told Investor C that the investor's proceeds could not be released until he sent an additional $45,000 for taxes and fees.

26. Investor C received follow-up emails from Massey and an individual identified as David Bacon using a purported Gruber and Green email address, assuring Investor C that his funds would be released once he paid the $45,000 "taxation settlement." Based on these representations, Investor C transferred the additional $45,000 to U.S.-based bank accounts

associated with the scheme and controlled by Dunoff to secure the release his purported trading profits, which Investor C never received.

### **Dunoff Violated the Federal Securities Laws**

27. As part of the scheme described above, Dunoff committed deceptive acts by opening bank accounts in the names of the fictitious entities Intereast and Trans World.

28. Dunoff committed these deceptive acts in furtherance of the scheme to defraud.

29. Dunoff knowingly or recklessly committed these deceptive acts in furtherance of the scheme to defraud.

30. Dunoff committed these deceptive acts in connection with the purchase or sale of a security.

31. Dunoff committed these deceptive acts by use of the means or instrumentalities of interstate commerce or the mails.

32. At all times relevant to this complaint, Dunoff acted knowingly or recklessly.

## **CLAIMS FOR RELIEF**

## **FIRST CLAIM**

### **Violations of Section 17(a)(1) and (3) of the Securities Act**

33. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 32, inclusive, as if they were fully set forth herein.

34. From at least January 2009 through December 2010, as a result of the conduct alleged herein, Dunoff in the offer or sale of securities, directly or indirectly, by the use of any means or instruments of transportation or communication in interstate commerce, or by the use of the mails:

      a.    knowingly or recklessly employed devices, schemes, or artifices to defraud; or

      b.    knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers.

35. By engaging in the foregoing conduct, Dunoff violated and, unless restrained and enjoined, will continue to violate Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

## SECOND CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Thereunder

36. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 35, inclusive, as if they were fully set forth herein.

37. From at least January 2009 through December 2010, as a result of the conduct alleged herein, Dunoff knowingly or recklessly, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

      a.    employed devices, schemes, or artifices to defraud; or

      b.    engaged in acts, practices, or courses of business that operated as a fraud or deceit upon any person.

38. By engaging in the foregoing conduct, Dunoff violated and, unless restrained and enjoined, will continue to violate Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R.§ 240.10b-5(a) and (c)].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court enter a final judgment:

### I.

Permanently restraining and enjoining Dunoff and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

### II.

Permanently restraining and enjoining Dunoff and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Ordering Dunoff to disgorge any and all ill-gotten gains, together with prejudgment interest thereon, derived from the activities set forth in this complaint;

### IV.

Ordering Dunoff to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

### V.

Retaining jurisdiction of this action for purposes of enforcing any final judgment and orders; and

## VI.

Granting such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

Dated: August 20, 2015

*Christopher R. Kelly* (signature)

Sharon B. Binger
G. Jeffrey Boujoukos (PA Bar No. 67215)
Brendan P. McGlynn (PA Bar No. 77271)
David L. Axelrod
Christopher R. Kelly (NY Bar No. 4247722)
Lisa M. Candera (PA Bar No. 93753)

Attorneys for Plaintiff:

SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
One Penn Center
1617 JFK Blvd., Ste. 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
KellyCR@sec.gov

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS
MOSHE YEHUDA DUNOFF

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Palm Beach County, FL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher R. Kelly, Esquire
Securities and Exchange Commission
1617 JFK Blvd., Ste. 520, Philadelphia, PA  19103, (215) 597-3100

Attorneys *(If Known)*
Hope Lefeber, Esquire
Two Penn Center, 1500 JFK Blvd., Ste. 1205
Philadelphia, PA  19102, (610) 668-7927

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 77q(a)(1) and (3); 15 U.S.C. § 78j(b)
Brief description of cause:
Securities fraud

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER 14-cr-103

DATE: August 20, 2015
SIGNATURE OF ATTORNEY OF RECORD
Christopher R. Kelly (NY Bar No. 4247722)   */s/ Christopher R. Kelly*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | : | CIVIL ACTION |
| v. | : | |
| MOSHE YEHUDA DUNOFF | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x)

| August 20, 2015 | Christopher R. Kelly | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 597-3100 | (215) 597-2740 | KellyCR@sec.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1617 JFK Blvd., Ste. 520, Philadelphia, PA 19103

Address of Defendant: 1010 Almeria Road, West Palm Beach, FL 33405

Place of Accident, Incident or Transaction: Eastern District of Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

RELATED CASE, IF ANY:
Case Number: 14-cr-103   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☒   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
  (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
  (Please specify) _____

ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Christopher R. Kelly, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

x   Relief other than monetary damages is sought.

DATE: August 20, 2015   Christopher R. Kelly   NY Bar No. 4247722
                Attorney-at-Law                 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: August 20, 2015   Christopher R. Kelly   NY Bar No. 4247722
                Attorney-at-Law                 Attorney I.D.#

CIV. 609 (5/2012)